

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED

OCT 2 3 2018

*Matthew Thel*
CLERK

In the Matter of the Search Regarding:

18-109-01

No. ___1:18-mj-15___

**AFFIDAVIT IN SUPPORT OF
SEARCH WARRANT
APPLICATION "REDACTED"**

I, Daniel A. Orr, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with Facebook usernames ▮▮▮▮▮▮▮ and ▮▮▮▮ that are stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user name.

2.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws, and am duly authorized by the Attorney General to request a search warrant.  I am currently assigned to the FBI Aberdeen Resident Agency of the FBI's Minneapolis Field Office, and have been

since January of 2004.  Prior to that time, I was assigned to the FBI Phoenix Division where I was assigned to the Bank Fraud Task Force.  I was in the FBI Phoenix Division for approximately six years.  During my time as a special agent, I have assisted with numerous investigations and used various investigative techniques, such as electronic and physical surveillance, interviews of witnesses and defendants, the execution of search warrants, and the use of confidential informants related to said investigations.

3.    The facts in this affidavit come from my personal observations, training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that criminal acts of Assault with Intent to Commit Murder, Kidnapping, Assault With A Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Aiding and Abetting in violation of 18 U.S.C. §§ 2, 1153, 1201, 113(a)(1), (a)(3),  and (a)(6) were committed by Tiffany Hope Bernard, Brendon Javon Jacob Rodlund, Andrew Renville, and Randall Delbert Pumpkinseed.  There is also probable cause to search the information described in Attachment A for evidence of the crime.

[2]

## PROBABLE CAUSE

5.     The Federal Bureau of Investigation (FBI) is investigating the kidnapping, assault with intent to commit murder, assault with a dangerous weapon, and assault resulting in serious bodily injury of Josue Alaniz, a Hispanic male who was found beaten and left for dead near Dry Wood Lake near Sisseton, South Dakota.  He had multiple skull and facial fractures and had the letters "MC" carved into his chest.  When found, Alaniz said three men had been involved in his assault.  Shortly thereafter, Alaniz went unconscious and slipped into a coma.  The criminal acts occurred on tribal land on the Lake Traverse Reservation in the State and District of South Dakota.  The victim was hospitalized and fought for his life for several weeks before regaining consciousness.   The FBI first became informed of the alleged crimes after a fisherman, Donald Rustland, discovered the victim and contacted law enforcement.  Local law enforcement called the FBI Aberdeen Resident Agency on the day the victim was discovered, November 17, 2015, to report the details surrounding the assault and kidnapping.  At that point, an investigation was initiated and it is ongoing.

6.     At the inception of the investigation, concerned family and associates of the victim contacted law enforcement and reported that Alaniz had been in Watertown, South Dakota, the day prior to being discovered near Dry Wood Lake.  The last person he was seen with was Tiffany Bernard, an Indian female and member of the Sisseton-Wahpeton Oyate Sioux Tribe, who reportedly begged Alaniz for a ride to her home near Sisseton, South Dakota.

[3]

7.     On the day Alaniz was discovered near death, Alaniz's relative called his cellular telephone and was surprised when Tiffany Bernard, having possession of Alaniz's mobile phone, answered the call. Alaniz's relative reported this telephone conversation to the tribal police. Tribal law enforcement than called Bernard and asked Bernard why she had the victim's cell phone. Bernard admitted that she had the phone but claimed she sold it for a small amount of money to a man by the last name of Barse.

8.     On November 17, 2015, Alaniz's supervisor told law enforcement that Alaniz called him the night before and told him he was with a "crazy woman" who had taken control of his vehicle. She took the keys to his car and went inside a store while he remained in the car. Alaniz informed his supervisor that he was going to be late for his shift at work. More importantly, Alaniz told his supervisor that he was not sure where he was and that he feared something bad was going to happen to him.

9.     On November 17, 2015, Bernard fled the Lake Traverse Indian Reservation after she hired a ride from Douglas Livingston II, who drove her through the night to Montevideo, Minnesota. Livingston II is the husband of Bernard's friend, Brandy Genia.

10.    On November 19, 2015, Genia was interviewed and told law enforcement that when Bernard arrived at her house, she admitted she got a ride from a Mexican man. She also admitted she stole the man's cellular telephone and sold it. As they were talking, Bernard broke down crying and spontaneously uttered, "I fucked up! I'm probably going to prison."

[4]

11.     During the investigation, rumors circulated that Bernard's cousin, Cameron Marks, was involved in the assault of Alaniz.  On January 22, 2016, Marks was interviewed and told law enforcement that on around the night of November 16, 2015, he received a telephone call from Bernard who told him she was at the Coffee Cup Truck Stop in Summit, South Dakota, with a Mexican who had assaulted her and robbed her.  Bernard asked Marks if he could get some people together so she could bring the Mexican to him and they could assault him in retaliation.  Marks told Bernard he did not want to become involved.  He denied participation in the assault of Alaniz.

12.     Tiffany Bernard was interviewed twice concerning her involvement in the assault of Alaniz.  While she admitted getting a ride from him from Watertown to Agency Village, South Dakota, she claimed she got out of his car and he drove away after dropping her off.  She denied having anything to do with his assault.

13.     On May 11, 2017, Bernard contacted law enforcement through her attorney while she was in the Women's Prison in Pierre, South Dakota.  Bernard advised she wanted to provide information, through a proffer agreement, concerning the assault of Josue Alaniz.  During the interview, Bernard admitted she got a ride from Josue Alaniz from Watertown and claimed they drove to Agency Village.   She advised that she went inside to charge her cellular telephone.  While inside, Bernard saw Brendon Rodlund, a known drug dealer, and asked if he had any methamphetamine she could buy.  According to Bernard, Rodlund told her to meet him at Dry Wood Lake and he would sell her

[5]

the drugs she wanted.

14. Bernard claimed that she drove Alaniz's car to Dry Wood Lake and waited for Rodlund. A short time later, a pickup pulled up and three men got out and immediately pulled Alaniz out of the car and began assaulting him violently. The three assailants beat Alaniz with their closed fists, kicked, and stomped on him while he was on the ground. Bernard claimed she did not participate in the beating. Bernard said the three assailants were Brendon Javon Jacob Rodlund, Randall Delbert Pumpkinseed, and Andrew Renville.

15. After the violent assault of Alaniz, Rodlund told Bernard to get into the truck with them. While in the truck, Renville asked Rodlund if Alaniz was still alive. Rodlund responded, "He's still breathing."

16. The interviewing agents asked Bernard if she knew of anything being carved into Alaniz's chest. She paused and said, "Mop City." She elaborated that during the assault the assailants were amped up. Rodlund carved "MC" into Alaniz's chest. The letters "MC" stood for "Mop City" implying they "mopped him (Alaniz) up" in the beating.

17. Video surveillance from the convenience store in Agency Village on the evening of 11/16/2015 showed Bernard pull up in Alaniz's vehicle. She was driving the vehicle. She went inside while he waited outside. Alaniz could be seen outside with his car. Bernard went to the back of the store and plugged chargers into the wall to charge cellular telephones. While inside, Rodlund is seen and appears to briefly interact with Bernard. He then leaves the store.

[6]

18.    On October 4, 2017, Brendon Rodlund was interviewed at the Roberts County Jail.  During the interview, Rodlund was aware that he was under investigation for an alleged sexual assault of a young woman at Dry Wood Lake.  He declined to speak to the investigating agent invoking his right to counsel.  Nothing was said during this interaction regarding Alaniz, the victim of the physical assault.

19.    On January 25, 2018, an Amazon Kindle Fire Tablet was received from Sisseton-Wahpeton Sioux Tribal Councilman Francis Crawford.  Crawford's daughter, Maycee Crawford, owned the Kindle Fire but sold it to her uncle, Donald Redowl.  Redowl saw Maycee's Facebook Messenger was open on the device and came across an exchange of messages between Maycee and Brendon Rodlund.  The conversation took place on 10/22/2017 at 10:55 PM.  Rodlund writes, "6 month treatment an prob go to the Fed joint after I'm lookin at attempt murder on a Mexican I mopped up I guess I fucked him up pree good  fbi barely let me come Fml I'll be ight (alright) tho  It's only 7-14 in Feds for attempted murder".

20.    Through the training and experience of your Affiant, it is probable that communication between Rodlund and Maycee Crawford will be present in the Facebook accounts of both.  However, your Affiant is also aware that it is not the common practice of Facebook to store deleted communications on their messenger account.  It is probable that, in addition to the direct communication between Rodlund and Crawford, there will be various pictures, wall posts, and other conversations with other witnesses that will be material to the ongoing

[7]

investigation and will corroborate timeliness and the victim's statements, and that such information will be present on the Facebook user accounts of Rodlund and Maycee.   It is probable, as well, that other conversations will take place between Rodlund, Andrew Renville, and Randall Delbert Pumpkinseed.

21.   An open records search of publicly available information revealed that Maycee Crawford has two Facebook user names: ████████████ and ██████ with profile IDs of ██████████████ and ██████████, respectively.   A preservation letter was previously submitted to Facebook to preserve the sought communiques.   Facebook provided a case number associated with the preservation of Crawford's accounts as FB case #████████.

22.   Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.Facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

23.   Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

24.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.

[9]

Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

28.    Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

29.   If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30.   Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

31.   Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

33.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

34.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

36.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.   When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:   profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

[12]

event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

38.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

39.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the

[13]

United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under

[14]

investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

43.    Based on the forgoing, I request that the Court issue the proposed search warrant.

44.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the

[15]

United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

_____

Daniel A. Orr, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 23 day of October, 2018.

_____

WILLIAM D. GERDES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A "REDACTED"

### Property to be Searched

This warrant applies to information associated with the Facebook usernames ███████████, profile ID ██████████████ and ██████, profile ID ████████████ that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.



## ATTACHMENT B "REDACTED"
### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and

information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook

account, including contacts with support services and records of actions taken.

## II.    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2, 1153, 1201, 113(a)(1), (a)(3), and (a)(6), which criminalize the kidnapping and aggravated assault of Josue Alaniz, involving Tiffany Hope Bernard, Brendon Rodlund, Andrew Renville, and Randall Pumpkinseed since October 21, 2017, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).



**FILED**

OCT 2 3 2018

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

In the Matter of the Search Regarding   No. _1:18-mj-15_

18-109-01

**APPLICATION FOR SEARCH AND
SEIZURE WARRANT "REDACTED"**

I, Daniel A. Orr, being duly sworn depose and say:

I am a Special Agent with the Federal Bureau of Investigation (FBI), and
have reason to believe that within the Facebook account of Maycee Crawford,
fully described in Attachment A, attached hereto and incorporated herein by
reference, hereinafter referred to as "SUBJECT ACCOUNT," in the District of
South Dakota, there is now concealed certain property, namely that fully
described in Attachment B, attached hereto and incorporated herein by
reference, which I believe is property constituting evidence of the commission of
criminal offenses, contraband, the fruits of crime, or things otherwise criminally
possessed, or property designed or intended for use or which is or has been used
as the means of committing criminal offenses, concerning violations of Title 18
United States Code §§ 2, 1153, 1201, 113(a)(1), (a)(3), and a(6).

The facts to support a finding of Probable Cause are contained in my
Affidavit filed herewith.

_____

Daniel A. Orr, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence on the __23__ day of
October, 2018, at ~~Sioux Falls~~, South Dakota.
Aberdeen

_____

WILLIAM D. GERDES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A "REDACTED"

### Property to be Searched

This warrant applies to information associated with the Facebook usernames ███████████, profile ID ███████████ and █████, profile ID ██████████ that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B "REDACTED"
### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)   All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and

information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook

account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2, 1153, 1201, 113(a)(1), (a)(3), and (a)(6), which criminalize the kidnapping and aggravated assault of Josue Alaniz, involving Tiffany Hope Bernard, Brendon Rodlund, Andrew Renville, and Randall Pumpkinseed since October 21, 2017, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

In the Matter of the Search Regarding   No. _____1:18-mj-15_____

18-109-01

**SEARCH AND SEIZURE WARRANT
"REDACTED"**

TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search of the Facebook account of Maycee Crawford, fully described in Attachment A, attached hereto and incorporated herein by reference, hereinafter referred to as "SUBJECT ACCOUNT."

I find that the affidavit, or any recorded testimony, establish probable cause to search the SUBJECT ACCOUNT, and that such search will reveal evidence of violations of violations of Title 18 United States Code §§ 2, 1153, 1201, 113(a)(1), (a)(3), and a(6), namely:   that fully described in Attachment B, attached hereto and incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before November 6, 2018_____ (not to exceed 14 days)
☒ in the daytime – 6:00 a.m. to 10:00 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized,
☐ for _____ days (not to exceed 30).
☐   until, the facts justifying, the later specific date of _____.

October 23, 2018 3:46 P.M. at Aberdeen, South Dakota
Date and Time Issued

WILLIAM D. GERDES
UNITED STATES MAGISTRATE JUDGE

[2]

## ATTACHMENT A "REDACTED"

### Property to be Searched

This warrant applies to information associated with the Facebook usernames ████████████, profile ID ██████████ and █████, profile ID ███████ that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B "REDACTED"

### Particular Things to be Seized

I.      **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and

information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook

account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2, 1153, 1201, 113(a)(1), (a)(3), and (a)(6), which criminalize the kidnapping and aggravated assault of Josue Alaniz, involving Tiffany Hope Bernard, Brendon Rodlund, Andrew Renville, and Randall Pumpkinseed since October 21, 2017, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

In the Matter of the Search Regarding

No. _____ *1:18-mj-15*

18-109-01

**RETURN "REDACTED"**

Date and time warrant executed: _____

Copy of warrant and inventory left with: _____

Inventory made in the presence of: _____

Inventory of the property taken and name of any person(s) seized (attach additional sheets, if necessary):

---

**CERTIFICATION**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

_____

Daniel A. Orr, Special Agent
Federal Bureau of Investigation